# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROWDY HUFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-879-R |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Rowdy Huff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge David L. Russell has referred this matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 9, hereinafter "R. _"). The parties have briefed their positions, and the case is ready for decision. For the reasons stated herein, it is recommended that the Commissioner's decision be affirmed.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB application on June 4, 2013; his disability onset date was ultimately alleged to be April 17, 2010. R. 15, 36-37, 164. Following denial of

his application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on December 30, 2014. R. 33-55. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. *See* R. 33, 51-54. The ALJ issued an unfavorable decision on March 19, 2015. R. 15-26.

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 17, 2010. R. 17. At step two, the ALJ determined that Plaintiff had several medically determinable impairments, "which when combined are severe: hypertension; reactive airway disease; obesity; osteoarthritis." R. 17 (citations omitted); *see* R. 17-21. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his medically determinable impairments. R. 22-24. The ALJ found that Plaintiff had the RFC to perform light work "except with nonexertional limitations." R. 22. The ALJ further found: "[Plaintiff] can: lift/carry 20 pounds occasionally and 10 pounds frequently; walk/stand up to 6 of 8 hours with normal breaks; and sit for up to 6 of 8 hours. [Plaintiff] can kneel only occasionally. He can perform simple, unskilled work and can adapt to the workplace." R. 22; *see also* 20 C.F.R. § 404.1567(b) (defining "light work"); R. 24 (ALJ giving great weight to the state reviewing medical consultants' conclusion that Plaintiff can perform unlimited light work but prescribing an additional limitation on kneeling in

2

light of Plaintiff's hearing testimony).  At step four, the ALJ found that Plaintiff's RFC did not allow him to perform his past relevant work of automobile assembler.  R. 24-25.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform.  R. 25-26.  Relying upon the VE's testimony regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light, unskilled occupations such as small-part assembler, shirt presser, or sorter, and that such occupations offer jobs that exist in significant numbers in the national economy.  R. 25-26.  Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period.  R. 26.

Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision.  *See* R. 1-7; 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied.  *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla

3

of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff, through counsel, raises numerous claims of error by way of a lengthy and largely unorganized narrative. *See* Pl.'s Br. (Doc. No. 13) at 2-11. The undersigned herein addresses those arguments directly raised and adequately developed by Plaintiff, as listed and considered below. As to the miscellany of undeveloped arguments, the undersigned finds them waived, noting:

> This Court cannot address contentions for which a claimant fails to develop the factual and legal bases for his arguments. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed"). On judicial review, "it is not our role to shore up [Plaintiff's] argument for him." *Chrismon v. Colvin*, 531 Fed.Appx. 893, 896 (10th Cir. 2013) (citation omitted).

*Bryant v. Berryhill*, No. CIV-15-1151-HE, 2017 WL 401263, at *5 (W.D. Okla. Jan. 30, 2017) (internal quotation marks omitted).

## I. The ALJ's Assessment of Dr. Bevers' Opinion

The record reflects Plaintiff received medical treatment primarily from W. Stanley Bevers, MD, prior to filing his DIB application on June 4, 2013. *See* R. 238-42, 244-91. After filing his application, Plaintiff continued to receive medical treatment from and on the orders of Dr. Bevers and also was provided an internal-medicine examination by Blake D. Christiansen, DO, a state consulting examiner. *See* R. 294-300, 305-20. Plaintiff asserts that the ALJ legally erred by failing to assess Dr. Bevers' opinion in accordance with the second prong of the "treating physician rule." *See* Pl.'s Br. at 2-4.

### A. *The Treating Physician Rule*

By regulation, a treating source's medical opinion generally is given "more weight" than that of a nontreating source. 20 C.F.R. § 404.1527(a)(2), (c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under Tenth Circuit authority, the evaluation of a treating physician's opinion follows a two-step procedure. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. § 404.1527(c)(2). The medical opinion of a treating physician must be given controlling weight if it is both *"*well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *See Watkins*, 350

5

F.3d at 1300-01; *Langley*, 373 F.3d at 1119. A treating physician opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300. The determination of how much deference to afford a treating physician opinion should be made in view of a prescribed set of regulatory factors, *id.* at 1301; 20 C.F.R. § 404.1527(c)(2); *see id.* § 404.1527(c)(2)(i), (c)(2)(ii), (c)(3)-(6).

   *B. The Medical Record and the Written Decision*

The medical evidence of record reflects that Plaintiff visited Dr. Bevers for a variety of issues both before and during the relevant disability period, including: back spasms, chest pain, coughing and asthma, knee and foot pain, headaches, low testosterone, and depression. *See* R. 244-91, 305-06, 315-20. On May 23, 2013, Dr. Bevers completed a Medical Source Statement ("MSS") regarding Plaintiff's ability to do work-related activities. R. 321-26 (Ex. C9F). Dr. Bevers' MSS opinions included findings that Plaintiff: can lift up to 20 pounds occasionally and carry up to 10 pounds occasionally; can stand, walk, or sit for up to 3 hours in an 8-hour workday; and can never kneel. R. 321, 322, 324. Dr. Bevers also stated that Plaintiff had hearing loss, but did not indicate any limitation arising from that condition, and that Plaintiff had vision loss, but indicated only that Plaintiff was unable to read "very small print." R. 324. Dr. Bevers opined that it was not "medically necessary" for Plaintiff to use a cane when ambulating. R. 322.

In the written decision, the ALJ discussed Dr. Bevers' treatment records. *See* R. 17 (citing Ex. C8F (R. 315-20)), 18-19 (citing Exs. C2F (R. 244-93), C5F (R. 305-07), C8F), 21, 23-24. The ALJ also addressed Dr. Bevers' MSS, stating:

>As for the opinion evidence, the [ALJ] has considered the medical source statement signed by the claimant's primary care physician, Dr. Bevers, in May 2013. Dr. Bevers limited the claimant to the lifting/ carrying and walking and standing for essentially light work; he noted limitations in foot controls. Dr. Bevers also places nonexertional postural, manipulative, environmental limitations. This medical source statement from the claimant's primary care physician is given little weight. Contemporaneous treatment notes include very little by way of objective findings on physical examination. X-ray findings were unremarkable, as was ECG. Dr. Bevers states the claimant has bilateral carpal tunnel syndrome, but the [ALJ] has located no objective findings supporting that conclusion. Dr. Christensen specifically notes there were no objective signs of carpal tunnel syndrome. Dr. Bevers states the claimant has MRI showing lumbar issues, but that evidence is not in this record. Dr. Christensen specifically noted on his physical examination that there were no signs of radiculopathy. The [ALJ] gives Dr. Bevers['] opinion very little weight as it is not consistent with his contemporaneous treatment records and is not substantiated by objective findings elsewhere in the record.

R. 23-24 (citing Ex. C9F).

*C. Discussion*

Plaintiff argues that the ALJ erred in determining the weight to be afforded the MSS at prong two. As noted above, at this step the ALJ must determine how much deference to afford the treating physician's opinion in light of prescribed regulatory factors:

>(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1527(c)(2)-(6).

According to Plaintiff, the ALJ "provided errant explanations" at this juncture and failed to adequately explain his assignment of little weight to the MSS. Pl.'s Br. at 3-4. The undersigned disagrees for the reasons outlined below.

First, Plaintiff is incorrect that "the ALJ's opinion does not discuss Dr. Bever[s'] treating relationship or notes," *id.*; this objection is unfounded. The ALJ addressed Plaintiff's history with Dr. Bevers and the physician's treatment notes in detail as noted above, *see* R. 17, 18-19, 21, 23-24, specifically noting the notes' lack of objective findings, *see* R. 23. Further, the written decision makes clear that the ALJ was aware of and considered the "[l]ength of the treatment relationship and the frequency of examination" and the "[n]ature and extent of the treatment relationship." 20 C.F.R. § 404.1527(c)(2)(i), (ii); *see, e.g.*, R. 18-19 (describing Dr. Bevers as Plaintiff's "primary care physician" and noting gaps in treatment from August 2009 to October 2011 and from December 2012 to July 2013).

Second, while acknowledging that the ALJ considered "the important factors of evidentiary support and consistency with the record," *see* 20 C.F.R. § 404.1527(c)(3), (c)(4), Plaintiff argues that the ALJ's opinion is not sufficiently specific in this respect. Pl.'s Br. at 4. The undersigned disagrees. As quoted above, the ALJ identified distinct reasons for his assignment of little weight to the MSS. For example, the ALJ stated that Dr. Bevers' "treatment notes include very little by way of objective findings on physical examination." R. 23. Plaintiff argues that Dr. Bevers provided various types of medical care to Plaintiff but does not dispute, through citation to particular items in the record, this characterization of the treatment notes—one that the undersigned finds to be supported by

8

substantial evidence. *See* R. 244-92, 305-06, 315-20; Pl.'s Br. at 4; *see also Bryant*, 2017 WL 401263, at *8 (citing *Effinger v. Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (noting that the court "will not comb through the record where counsel has not provided specific references tied to an argument")). As another example, the ALJ notes that Dr. Bevers indicates in the MSS that Plaintiff had an "MRI showing lumbar issues" but that no such evidence is in the record. R. 24; *see* R. 321, 322. These and other findings by the ALJ are undisputed by Plaintiff, reasonably supported by the evidence of record, and sufficiently demonstrate the ALJ's consideration of the factors prescribed by § 404.1527(c)(3) and § 404.1527(c)(4).[1]

Third, Plaintiff objects that the ALJ failed to discuss Dr. Bevers' medical "[s]pecialization," 20 C.F.R. § 404.1527(c)(5). Pl.'s Br. at 3. But Plaintiff does not identify any evidence of a relevant specialization or explain how express consideration of this factor would have affected the ALJ's assessment of the MSS. And "[t]he ALJ is not required to mechanically apply all of [the regulatory] factors in a given case." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016).

For all of these reasons, the ALJ's decision adequately and properly considered the pertinent factors, gave "good reasons" "for the weight he ultimately assign[ed] the opinion," and was "'sufficiently specific to make clear to any subsequent reviewers the

---

[1] Plaintiff suggests that the ALJ erred by relying upon "unremarkable" x-ray findings as evidence inconsistent with Dr. Bevers' MSS, arguing without citation to any authority that x-rays are not "dispositive" for knee injuries "most of the time" and that MRIs rather than x-rays are the "gold[]standard." R. 23; Pl.'s Br. at 4; *see* R. 308. As the Commissioner notes, this argument is a red herring. Plaintiff was referred by the SSA for a knee x-ray rather than an MRI scan, and there were no knee MRI scans in the record before the ALJ.

9

weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight.'" 20 C.F.R. § 404.1527(c)(2); *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5), 1301. Plaintiff has not shown that reversal is required based upon any error by the ALJ in assigning weight to Dr. Bevers' MSS pursuant to the treating physician rule.

## II. The ALJ's Consideration of Plaintiff's Impairments and Limitations

Plaintiff next challenges the ALJ's treatment of certain of Plaintiff's medical and mental conditions at step two, the RFC determination, and/or step five of the written decision. *See* Pl.'s Br. at 4, 5, 6-11.[2]

### A. *Knee Condition*

The ALJ discussed Plaintiff's complaints of knee pain and instability, addressing Plaintiff's relevant allegations as follows:

> To the extent claimant alleges osteoarthritis of his knees, the [ALJ] finds no medically determinable impairment because January 16, 2014 bilateral knee x-rays showed "good alignment without degenerative changes. No foreign bodies, masses or lo[o]se calcified bodies noted bilaterally." In any event the [ALJ] finds the claimant's alleged knee pain (whatever the source) would not result in any limitations beyond those in the [RFC] set forth below.

R. 19 (citing Ex. C6F (R. 308)); *see also* R. 17, 18, 21, 22.

---

[2] Plaintiff also argues that the ALJ's errors in determining the RFC "'corrupted the ALJ's findings'" at the third phase of step four, at which the ALJ is charged with determining "whether the claimant has the ability to meet the job demands" of the claimant's past relevant work "despite the mental and/or physical limitations found in" the RFC. Pl.'s Br. at 10 (alteration omitted) (quotation unattributed); *Bowman*, 511 F.3d at 1272 (internal quotation marks omitted). But at the third phase of step four, the ALJ did not find that Plaintiff could return to his past relevant work. To the contrary, the ALJ found that Plaintiff "was unable to perform any past relevant work" due to the requirements of such work exceeding those contemplated by the ALJ's RFC assessment. R. 24-25.

10

Plaintiff appears to object to this finding, stating, "Xrays as support for no impairment is misleading decision-making." Pl.'s Br. at 4. But Plaintiff relies only upon his own unsupported beliefs as to the usefulness of x-rays and does not challenge the ALJ's characterization of those x-rays, which is supported by the record. *See id.*; R. 308. Nor does Plaintiff point to record support for the proposition that his knee condition "result[ed] from anatomical [or] physiological . . . abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and thus can be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms," as required for the ALJ to find this condition to be a medically determinable impairment ("MDI"). 20 C.F.R. § 404.1508 (2015).

The ALJ was not "obliged . . . to categorically credit [Plaintiff's] testimony" regarding his knee pain and other knee symptoms. *White v. Comm'r of Soc. Sec. Admin.*, No CIV-16-439-HE, 2017 WL 986210, at *4 (W.D. Okla. Feb. 14, 2017) (R. & R.), *adopted sub nom. White v. Berryhill*, 2017 WL 979069 (W.D. Okla. Mar. 13, 2017). "The ALJ found Plaintiff's statements about the intensity," persistence, "and functionally limiting effects of" his symptoms "to lack credibility, and [Plaintiff] does not challenge that determination here." *Id.* (citation omitted); *see* R. 23. Plaintiff therefore has not shown that the ALJ's finding that Plaintiff's knee condition was not an MDI is not supported by substantial evidence.

*B. Reactive Airway Disease*

Plaintiff asserts that because the ALJ found that Plaintiff's "reactive airway disease" was an MDI that, when combined, formed a severe impairment, the omission of any breathing or environmental hazards from the RFC "is error." Pl.'s Br. at 7; *see* R. 17, 18.

The ALJ need not match each aspect of the RFC determination to a specific medical condition or a specific item of medical evidence. The RFC determination need only include such limitations as the medical record substantially supports. *See Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) ("The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence."); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Plaintiff therefore cannot show legal error or a lack of substantial evidence for the RFC determination due solely to any failure to expressly link an RFC limitation or restriction to reactive airway disease (or any other severe-when-combined impairment).

In addition, the ALJ provided multiple and specific reasons for excluding any limitation relating to Plaintiff's reactive airway disease. *See, e.g.*, R. 23 (noting that Plaintiff had never been referred for pulmonary function studies, had never required emergency-room treatment for symptoms, and has an inhaler available). Plaintiff does not challenge the accuracy of these reasons or show that these findings are not supported by substantial evidence.

Plaintiff, asserting that two of the three jobs identified by the ALJ at step five "involve environmental hazards," also appears to argue that the omission of restrictions linked to Plaintiff's reactive airway disease undermines the ALJ's step-five determination. Pl.'s Br. at 7 (citing Shirt Presser and Sorter); *see* R. 25-26. But Plaintiff's premise is unsupported: he fails to specify what "hazards" these jobs present, and the *Dictionary of Occupational Titles* ("DOT") definition for the job of Sorter expressly excludes all reasonably relevant environmental conditions. *See* DOT (4th rev. ed. 1991) 529.687-186 (Sorter, Agricultural Produce) (noting "Not Present – Activity or condition does not exist" for: exposure to weather, extreme heat or cold, or wetness and/or humidity; atmospheric conditions; radiation; toxic caustic chemicals; and other environmental conditions).

Moreover, even assuming error on the part of the ALJ in omitting any environmental restrictions and that Plaintiff would be unable to perform the job of Shirt Presser, Plaintiff cannot show any prejudice when the remaining occupations independently support the determination that suitable jobs in significant numbers. *See Duncan v. Barnhart*, 608 F. App'x 566, 577-78 (10th Cir. 2015) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)); *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649-50 (10th Cir. 2016). Here, neither the occupation of Sorter nor that of Assembler "involve[s] environmental hazards" relevant to breathing and reactive airway disease. *See* DOT 529.687-186 (Sorter, Agricultural Produce); DOT 731.687-010 (Assembler). These occupations collectively offer 68,000 jobs in the national economy, according to the VE. R. 53 (VE testifying that Sorter offers 39,000 jobs nationally and Assembler offers 29,000 jobs nationally). That total is sufficient to support the ALJ's step-five conclusion. *See Raymond v. Astrue*, 621

F.3d 1269, 1274 (10th Cir. 2009) (upholding ALJ's reliance on VE testimony where, even assuming two of the three jobs relied upon by the ALJ were erroneous, substantial evidence showed claimant could do the third job, which existed in significant numbers in the national economy); *Hill v. Colvin*, No. CIV-13-1232-HE, 2015 WL 1412581, at *7 (W.D. Okla. Mar. 26, 2015) (affirming denial of benefits where ALJ found 47,700 nationally available jobs constituted a significant number).

### *C. Hearing Loss*

The ALJ stated that Plaintiff "testified to hearing loss" and that Dr. Bevers' MSS "notes the claimant has hearing loss." R. 19 (citing Ex. C9F). But the ALJ further found:

> However, there is no indication that claimant was ever referred for audiology testing. Dr. Christensen noted no hearing deficits to normal conversational voice. On this record, the ALJ finds no medically determinable impairment of hearing loss and certainly no indication that any hearing problems have resulted in more than minimal limitations in ability to do basic work activity.

R. 19 (citing Ex. C3F (R. 294-301) at R. 295).

Plaintiff asserts that his hearing loss "would knock out the third job [of Assembler] due to noise." Pl.'s Br. at 7. While the Assembler job description (as well as the Shirt Presser's) does note a "Moderate" noise level of 3, and the Sorter job notes a "Loud" noise level of 4, Plaintiff offers no authority for the proposition that the presence of noise at a worksite would preclude someone with hearing loss from working at those jobs. *See id.*; DOT 731.687-010 (Assembler); DOT 363.685-026 (Shirt Presser); DOT 529.687-186 (Sorter, Agricultural Produce).

In addition, Plaintiff has not shown that the ALJ's finding that Plaintiff's hearing loss was at most a nonsevere impairment was not supported by substantial evidence. *See*

14

20 C.F.R. § 404.1521 (2015) (defining nonsevere impairment as an impairment or combination of impairments that "does not significantly limit" the claimant's ability to do basic work activities, including capacity for hearing). The ALJ accurately recited Dr. Christensen's finding regarding Plaintiff's lack of hearing deficits, and Plaintiff himself testified that he has only "slight" hearing loss. *See* R. 19, 49, 295. Pointing only to Dr. Bevers' naked statement in the MSS, *see* R. 324—which the ALJ properly "explain[ed]" his failure to adopt for the reasons outlined above in Part I.C, SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)—Plaintiff does not establish that his hearing loss "significantly limits" his ability to do basic work activities. 20 C.F.R. § 404.1520(c) (defining "severe" impairment); *see also Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015) (noting that the mere presence of a condition is not determinative of a disability; rather, the condition must alone or in combination render the claimant unable to work); SSR 96-8p, 1996 WL 374184, at *1 ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."). Significantly, Dr. Bevers stated, "Pt has had hearing loss," but also found no impairment to Plaintiff's abilities "to hear and understand simple oral instructions," "to communicate simple information," or to use a telephone. R. 324. Plaintiff thus cannot prove that his hearing

15

loss should have been considered a severe impairment[3] and has not shown that the omission of relevant limitations undermines the RFC.

## D. Vision Loss

Plaintiff states that the ALJ "never discussed" Plaintiff's vision loss. Pl.'s Br. at 7. This is incorrect. The ALJ specifically noted Plaintiff's testimony regarding episodes of blurred vision. *See* R. 22.

Next, citing only Dr. Bevers' MSS, Plaintiff argues that the ALJ failure to include any RFC limitations relating to vision undermines that determination. *See* Pl.'s Br. at 7 (citing R. 324 (Dr. Bevers noting "Pt has had . . . vision loss")). As outlined above, the ALJ properly explained his failure to adopt Dr. Bevers' unsupported conclusions. *See* discussion *supra* Part I.C; SSR 96-8p, 1996 WL 374184, at *7. Plaintiff's reference to the MSS, standing alone, does not prove that his vision loss met the criteria to be considered an MDI. *See* 20 C.F.R. § 404.1508 (2015). Moreover, Dr. Bevers opined that despite Plaintiff having "had . . . vision loss" and being unable to read very small print, Plaintiff was able to: "avoid ordinary hazards in the workplace," "read ordinary newspapers or book print," "view a computer screen," and "determine differences in shape and color of small objects such as screws, nuts or bolts." R. 324. And even assuming error by the ALJ, Plaintiff has provided no support for his argument that an inability to read very small print

---

[3] Even if the ALJ had so erred at step two, "an error in determining an impairment's severity at step two . . . is not reversible if the ALJ proceeds further to evaluate other impairments." *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016)). Because the ALJ proceeded to consider other impairments in determining the RFC, *see* R. 19, 22, such an error at step two would not warrant reversal.

prevents him from performing any of the specific jobs identified by the ALJ and therefore has not shown that he was actually prejudiced by the omission of vision-related limitations from the RFC. *See Harris v. Astrue*, 496 F. App'x 816, 819 n.1 (10th Cir. 2012) ("The burden to show prejudicial error on appeal rests with [the claimant]." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).

### E. Use of a Cane

At the administrative hearing, Plaintiff testified that he has a cane that he uses "when needed." R. 42. Dr. Bevers opined in the MSS that Plaintiff does not require the use of a cane to ambulate, that use of a cane is not medically necessary, and that without a cane, Plaintiff can use his free hand to carry small objects. R. 322. Dr. Christensen noted that although Plaintiff had a cane that "made little difference in his gait," Plaintiff nonetheless "ambulates in a safe and stable gait at a slow speed without the use of any assistive devices." R. 295.

Plaintiff objects that "the ALJ did not include any cane. . . when considering [the] RFC" and that this omission undermines the RFC because the ALJ "must discuss all impairments, even the nonsevere ones." Pl.'s Br. at 5. Plaintiff's argument is meritless. First, the ALJ explicitly considered the cane-related testimony and evidence in his RFC determination. *See* R. 22, 23. Second, examining physician Dr. Christensen's reference to Plaintiff's use of a cane and Plaintiff's own allegations do not amount to "medical documentation establishing the need for the device," such that the cane would be "medically relevant to the calculation of" Plaintiff's RFC under Social Security Ruling 96-9p. *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009) (citing SSR 96-9p, 1996

WL 374185, at *7 (July 2, 1996)); *cf. Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988) ("[T]he claimant's descriptions [of his impairments], alone, are not enough to establish a physical or mental impairment."); R. 180 (Plaintiff's wife reporting that Plaintiff does not use a cane), R. 203 (Plaintiff reporting that he uses a cane to help when walking but "not every[]day").

### F. Depression

Finally, Plaintiff challenges the ALJ's consideration of his depression. *See* Pl.'s Br. at 6-7. In the written decision, the ALJ noted at step two Dr. Bevers' treatment of and issuance of prescription medication for Plaintiff's depression/anxiety, *see* R. 18, and an examining psychologist's evaluation of Plaintiff, *see* R. 20 (citing R. 302-03), but found Plaintiff's mental MDIs to be nonsevere in nature:

> The claimant's [MDIs] of depression/anxiety, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic work activities and were therefore nonsevere. The claimant is prescribed antidepressant medication by his primary care physician. There is no indication he has been referred for counseling.

R. 19.

Plaintiff objects that "[t]he ALJ says it is not severe because [Plaintiff] has no counseling" because counseling is not required to find a severe mental impairment. Pl.'s Br. at 6. Plaintiff's characterization is not a reasonable understanding of the ALJ's statements, which do not condition the relevant finding upon Plaintiff having gone to counseling. Rather, the ALJ noted the lack of any such mental-health treatment merely as support for his finding that Plaintiff's depression/anxiety "did not cause more than minimal limitation" in his ability to work. R. 19.

18

This approach does arguably fail to comport with *Grotendorst v. Astrue*, in which the Tenth Circuit noted that "consideration of the amount of treatment received by a claimant" does not factor into the ALJ's severity determination. *Grotendorst*, 370 F. App'x 879, 883 (10th Cir. 2010) (emphasis omitted). But such "an error at step two . . . concerning one impairment is usually harmless when the ALJ . . . finds another impairment is severe and proceeds to the remaining steps of the evaluation." *Id.*; *accord Ray*, 657 F. App'x at 734. Here, any error "is not reversible" because "the ALJ proceed[ed] further to evaluate other impairments" in the remaining steps of the sequential evaluation. *Ray*, 657 F. App'x at 734; *see* R. 21-24. In addition, the ALJ specifically considered evidence and testimony regarding Plaintiff's mental impairments in the RFC assessment, *see* R. 22, 24, and Plaintiff has not shown that these impairments caused functional limitations whose omission from the RFC rendered that determination unsupported by substantial evidence. Plaintiff has not established any reversible error in this respect.

## RECOMMENDATION

As outlined above, Plaintiff has failed to show that the ALJ's decision or its underlying determinations are unsupported by substantial evidence or are the product of legal error. The undersigned therefore recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 14, 2017. The parties

further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 31st day of August, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE